MASTROM, INC. D/B/A PROFESSIONAL MANAGEMENT
v. JERRY E. WARREN

No. 7326SC316

(Filed 23 May 1973)

1. Contracts § 7; Master and Servant § 11— covenant not to compete — prerequisites

Restrictive covenants not to engage in competitive employment are in partial restraint of trade and to be enforceable must be (1) in writing, (2) supported by valid consideration, and (3) reasonable as to terms, time and territory.

2. Contracts § 7; Master and Servant § 11— covenant not to compete — consideration

When the employment preexists the execution of an employment contract containing a covenant not to compete, there must be some additional consideration to the employee to support his covenant not to compete.

3. Contracts § 7; Master and Servant § 11— covenant not to compete — absence of consideration

Covenant not to compete contained in an employment contract executed by defendant employee after he had been employed by plaintiff employer for over three years was unsupported by consideration and unenforceable where defendant performed the same services and the terms of his employment remained the same after he signed the contract, and the provision of the contract relating to compensation imposed no obligation on the employer to increase defendant's compensation but provided only that raises would be given in the discretion of the employer.

APPEAL by plaintiff from Snepp, Judge, 11 December 1972 Session of Superior Court held in MECKLENBURG County.

This is a civil action instituted by plaintiff, Mastrom, Inc., doing business as Professional Management, to enjoin defendant from violating the terms of an anticompetitive covenant contained in a contract of employment with defendant. Facts pertinent to the resolution of the issues raised by this appeal are summarized as follows:

Plaintiff corporation is engaged in financial and management counseling of members of the medical and dental professions. On or about 16 June 1968, defendant was employed by plaintiff as a consultant at a starting salary of $415.00 per month. By 1 December 1969 defendant had received raises totaling $185.00 per month, making his total monthly compensa-

tion $600.00. Thereafter, plaintiff received semi-annual raises, effective 1 June and 1 December of each year until 1 December 1971. On or before 1 November 1971, Stanley E. Burgin, area manager of the corporate plaintiff, presented defendant with an employment contract and informed defendant that he would receive a pay raise if he signed the contract but would not receive a pay raise if he refused to sign. On 10 November 1971, defendant signed the contract and thereafter received pay raises of $25.00 per month in December, 1971, March, 1972, June, 1972, and September, 1972. The anticompetitive covenant contained in the employment contract in pertinent part provides:

> "Employee agrees that he will not take unfair advantage of the Employer's disclosure of its systems and procedures, and will not take unfair advantage of having been placed in a direct personal and confidential relationship with the Employer's clients. Specifically, the Employee agrees that, if his employment terminates for any cause after he has been employed for ninety (90) days he will not, for a period of three (3) years thereafter, solicit, contract for or render the same or similar services to any individual, firm, partnership, association or corporation who or which has been, within one year prior to the date of such termination, a client of the Employer serviced either by the Employee or by a consultant supervised by the Employee."

On 1 December 1972 plaintiff tendered his resignation to be effective that same day. Stanley Eugene Burgin testified that since that time:

> "Every one of the firms serviced by the defendant, Mr. Warren, within the last year have terminated. There were sixty-six clients representing ninety-two doctors and dentists in and around the area of Charlotte serviced by his firm and approximately twenty-five per cent of his firm's clientel [*sic*] was lost in the days' span of December 1st through December 5th."

On 6 December 1972, plaintiff brought this action seeking to enforce the covenant not to compete contained in the employment contract. Pursuant to appropriate notice, plaintiff moved for a temporary injunction against defendant and following a hearing on 15 December 1972, Judge Snepp made findings of fact in pertinent part as follows:

"5. That the Defendant was employed by the Plaintiff on June 16, 1968 and remained in the employ of the Plaintiff until November 30, 1972.

6. That during the entire period of employment, the Defendant performed the same type of services and retained the same status with the Plaintiff employer.

\* \* \*

8. That at the time the Defendant signed said contract, his terms of employment with the Plaintiff remained the same in all respects.

9. That the Plaintiff had a pattern of reviewing each employee's salary on a periodic basis.

\* \* \*

11. That the raise the Defendant received on December 1, 1971, was the result of a periodic review by the Plaintiff and was not given as consideration for the Defendant's signing said Employment Contract on November 10, 1971.

12. That paragraph 7 of said contract which purports to be the consideration of the Plaintiff employer for said contract is indefinite as to time and amount and merely states that raises will be given in the discretion of the employer.

13. That the covenant not to compete was the primary purpose of the Plaintiff having said contract signed."

Based upon these findings, the court concluded that the provision in the employment contract governing compensation is "so vague and indefinite as to be unenforceable," is "illusory," and that "the contract is without consideration on the part of the Plaintiff and is therefore unenforceable." The injunctive relief prayed for by plaintiff was denied; whereupon, plaintiff appealed.

*Elam and Stroud by William H. Elam and Wade and Carmichael by J. J. Wade, Jr., for plaintiff appellant.*

*Thomas E. Cummings for defendant appellee.*

HEDRICK, Judge.

Plaintiff contends that "[t]he Trial Court committed error . . . in finding the employment contract void and unenforceable and in denying the preliminary injunction." We disagree.

[1] Restrictive covenants not to engage in competitive employment are in partial restraint of trade and to be enforceable must be (1) in writing, (2) supported by valid consideration, and (3) reasonable as to terms, time and territory. The absence of any of these requirements is fatal. *Greene Co. v. Kelley,* 261 N.C. 166, 134 S.E. 2d 166 (1964).

[2] The contract of employment containing the covenant not to compete was executed by defendant more than three years after the commencement of his employment with plaintiff. "When the employment preexists the execution of the contracts, there must be some additional consideration to the employee to support his covenant not to compete. *Greene Co. v. Kelley* . . . [*supra*]." *Wilmar, Inc. v. Liles* and *Wilmar, Inc. v. Polk,* 13 N.C. App. 71, 77, 185 S.E. 2d 278, 282 (1971), cert. denied, 280 N.C. 305, 186 S.E. 2d 178 (1972).

[3] Paragraph 7 of the employment contract provides:

> "COMPENSATION: The Employer agrees to compensate Employee for his services rendered hereunder in accordance with the rates of compensation determined by designated officers of the Employer in accordance with policies of the Board of Directors. Tenure, proficiency and overall work load will be fairly taken into consideration by the Employer in establishing Employee's compensation for services rendered."

This provision of the employment contract fails to impose any obligation on plaintiff to increase or even refrain from decreasing the compensation to be paid to defendant. As appears from plaintiff's own evidence, "Each raise was based on merit, and it's totally in Mr. Burgin's discretion when he gives a raise." Therefore, evidence tending to show that defendant's raise was dependent on whether he signed the contract and that defendant did subsequently receive periodic raises after executing the contract does not relate these raises to the anticompetitive covenant or remedy the fact that the purported consideration, as recited in the employment contract, is illusory.

Defendant, as a further defense, stated that at the time he executed the contract:

> "[H]e had been employed by the Plaintiff for over three years and was already completely familiar with the practices and procedures of the Plaintiff";

and that

> "[H]is terms of employment with the Plaintiff remained the same."

Stanley Eugene Burgin testified:

> "He has known the defendant, Jerry Warren, four and a half years and has supervised him at Professional Management for this entire period of time. While under the employment of Mastrom, Inc., Mr. Warren was afforded training and educational facilities by company divisional seminars, educational type programs, company-wide training sessions, plus information distributed from the company home office.
>
> In his opinion, Mr. Warren's skills would make him a highly qualified and/or unique person in . . . profession."

Obviously, defendant had acquired a knowledge of plaintiff's business methods, territories and clientele prior to the execution of the employment contract and the conclusion is inescapable that:

> "[I]n actuality the restrictive covenant not to compete here sought to be enforced is not an ancillary contract at all. It is the main purpose of the contract and not a subordinate feature. It becomes and is, therefore, a naked contract not to compete not protected as to enforceability by the exceptions afforded ancillary contracts in restraint of trade permissible in connection with the sale of a going business, a contract of employment, or a lease." *Wilmar, Inc. v. Liles* and *Wilmar, Inc. v. Polk, supra*, at 79.

For the reasons stated, the order of the trial court is

Affirmed.

Judges CAMPBELL and PARKER concur.