AMDAR, INC. v. JIMMY DALE SATTERWHITE

No. 7710SC694

(Filed 1 August 1978)

1. **Master and Servant § 11.1— covenant not to compete—consideration sufficient**
   Where a new contract containing a covenant not to compete was entered into annually by plaintiff employer and defendant employee, the new contract

bound the employer for an additional year, and this detriment to him was sufficient consideration to support the covenant not to compete.

**2. Master and Servant § 11.1— covenant not to compete—requirements for enforceability**

For restrictive covenants not to engage in competitive employment to be enforceable, they must be in writing, supported by valuable consideration and reasonable as to terms, time and territory.

**3. Master and Servant § 11.1— covenant not to compete—terms reasonable**

Terms of defendant's covenant not to compete were not unreasonable where defendant was prohibited from engaging in the business of teaching dancing or soliciting dancing pupils in an area within a 25 mile radius of plaintiff's business and such restriction was to last for a period of one year.

**4. Injunctions § 13.2— preliminary injunction—sufficiency of showing of irreparable injury**

In an action by plaintiff dance studio to enforce a covenant not to compete, plaintiff showed the probability of irreparable harm sufficient to entitle it to a preliminary injunction where plaintiff showed a confidentiality between it and its customers and that defendant's actions betrayed that confidence; and it showed the loss of one patron to defendant's new employer and the possibility of loss of others.

APPEAL by defendant from *Clark, Judge*. Judgment entered 21 June 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 25 May 1978.

This is an appeal from a preliminary injunction.

Plaintiff, operator of the Arthur Murray Dance Studio in Raleigh, instituted this action against defendant, a former employee, to enforce a covenant not to compete. Paragraph 7A of the employment contract, dated 3 January 1976, provides:

". . . that upon the termination of this contract and for a period of one (1) year thereafter, the Employee shall not in said city of Employer's studio and within a radius of twenty-five (25) miles of the Employer's studio become engaged directly or indirectly in the business of a dance studio or school, accept employment in any capacity whatsoever in any dancing studio or school, dance for hire or compensation in connection with any dancing studio or school, give instructions on dancing in any form whatsoever, solicit business for himself or anyone else in any manner relating to dancing, or dancing lessons or instructions, or compete with the business of the Employer in any other way."

Following a hearing the court found facts as follows:

1. Plaintiff and defendant entered into written contract (Staff Employment Agreement, see Plaintiff Exhibit No. 1) on January 3, 1976, by the terms of which Agreement defendant was employed as a dance instructor and salesman in the business of teaching dancing generally classified as ballroom dancing.

2. Defendant worked in said employment and obtained benefits of compensation, further training and practice and continued knowledge of and experience in the secrets and methods of plaintiff's business up until January 10, 1977, at which time defendant ceased working for plaintiff.

3. On January 3, 1977, defendant submitted a letter to plaintiff stating his intention to resign from his employment with plaintiff and stating therein that he "must move into other areas and means of employment in order to secure a brighter future."

4. Defendant, for a short time thereafter, worked in employment not associated with dancing, but in early February 1977 was contacted by Mr. Waldo Clifton, sole proprietor of the dance studio business known as "Carolina Cotillion Club". After a discussion between plaintiff and Waldo Clifton concerning defendant's contract with plaintiff (the Staff Employment Agreement, Plaintiff Exhibit No. 1), the defendant was hired by Carolina Cotillion Club as a dance instructor teaching ballroom dancing to customers of Waldo Clifton.

5. Plaintiff's dance studio is located on Hillsborough Street in the City of Raleigh, North Carolina. Carolina Cotillion Club's dance studio is located eleven blocks east of plaintiff's dance studio and also is on Hillsborough Street in the City of Raleigh, North Carolina. Carolina Cotillion Club and the defendant are and since February 1977 have been in a business in direct competition with plaintiff.

6. Customers of the plaintiff, since February 1977, have received on several occasions mailings from the defendant and Carolina Cotillion Club promoting and advertising the business of Carolina Cotillion Club and the defendant. At

least one customer of the plaintiff (and customer of defendant while employed by plaintiff) has recently become a customer of Carolina Cotillion Club and the defendant.

The court concluded as a matter of law that the contract between the parties is in writing, is supported by valid consideration, and is reasonable as to terms, time and territory; that defendant is employed with Carolina Cotillion Club which is in a business in direct competition with plaintiff and that defendant's duties with his new employer are in direct competition with the business of plaintiff; that defendant's activities with his new employer are in violation of the terms of the contract between him and plaintiff; that it is probable that plaintiff will prevail upon the merits of this action; and that plaintiff will likely suffer irreparable damage if a preliminary injunction is not issued in this cause.

Defendant was enjoined, pending the trial of this cause on its merits or until further order by the court, "from engaging directly or indirectly within a radius of twenty-five miles of plaintiff's studio on Hillsborough Street, Raleigh, North Carolina, in the business of Waldo Clifton and Carolina Cotillion Club in the business of a dance studio or school"; from accepting employment in any capacity whatsoever in any dance studio or school; from dancing for hire or receiving compensation in connection with any dancing studio or school, giving instruction on dancing in any form whatsoever, soliciting business for himself or anyone else in any manner relating to dancing or dancing lessons or instructions; or from competing with the business of plaintiff in any other way. Defendant was also prohibited from using or disclosing some or all of the trade secrets, names of pupils or other information imparted to him by plaintiff, specifically the names, addresses and telephone numbers and other information relating to plaintiff's customers and particularly plaintiff's teaching techniques and sales methods.

*Boyce, Mitchell, Burns & Smith, by G. Eugene Boyce and Lacy M. Presnell II, for plaintiff appellee.*

*Manning, Fulton & Skinner, by Howard E. Manning, Jr., for defendant appellant.*

BRITT, Judge.

[1]   Defendant contends first that the trial court erred in finding and concluding "that the contract between plaintiff and defendant was supported by valuable consideration and reasonable as to time, terms and territory". We find no merit in this contention.

While defendant suggests in the statement of his first contention lack of valuable consideration for the contract, he does not argue that point in his brief. When defendant's counsel was questioned about this on oral argument, he admitted that evidence at the hearing showed that the agreement in question was preceded by similar annual agreements for the duration of defendant's employment with plaintiff. We therefore hold that this case differs from *Wilmar, Inc. v. Liles* and *Wilmar, Inc. v. Polk*, 13 N.C. App. 71, 185 S.E. 2d 278 (1971), *cert. denied*, 280 N.C. 305, 186 S.E. 2d 178 (1972).

In those cases the covenants not to compete were entered into after the employees had been employed for some time and the purported consideration, a pension plan and an agreement to pay one-half of the employee's gasoline bills, were held illusory as they were both subject to amendment solely within the discretion of the employer. Here, the new contract of employment binds the employer for an additional year. This detriment to him is sufficient consideration to support the covenant not to compete.

[2]   Both parties concede that for restrictive covenants not to engage in competitive employment to be enforceable they must be (1) in writing, (2) supported by valid consideration, and (3) reasonable as to terms, time and territory. *Greene Co. v. Kelley*, 261 N.C. 166, 134 S.E. 2d 166 (1964); *Paper Co. v. McAllister*, 253 N.C. 529, 117 S.E. 2d 431 (1960); *Mastrom, Inc. v. Warren*, 18 N.C. App. 199, 196 S.E. 2d 528 (1973).

[3]   In his brief defendant states that he does not argue that the provisions of Paragraph 7A of the agreement are unreasonable as to duration or territory, but he insists that the terms of the agreement are unreasonable "because of the restrictions placed upon defendant's right to employment upon termination of his employment with the plaintiff". He argues that this case is controlled by *Paper Co. v. McAllister, supra*. We disagree.

In *Paper Co.*, the employee, a salesman in the fine paper trade, agreed that he would not "for a period of three years after the termination of this contract, regardless of the cause or manner of said termination, either directly or indirectly engage in the manufacture, sale or distribution of paper or paper products within a radius of 300 miles of any office or branch of the Henly Paper Company or its subsidiary divisions, nor will he aid, assist or have any interest in any such business within the limits of the territory or during said time as herein provided. . . ." The trial court denied plaintiff injunctive relief and it appealed. In affirming the trial court, the Supreme Court held that the agreement was without consideration since defendant signed it several months after he began working with the plaintiff. The Supreme Court further held that since defendant's employment was confined to the fine paper trade, a covenant that he would not engage, either directly or indirectly, in the manufacture, sale or distribution of paper or paper products in a territory extending in a 300 mile radius from any of plaintiff's divisions, embracing territory extending from Delaware to Alabama and from Indiana to the Atlantic Ocean, was unreasonable and void in that it excluded defendant from too much territory and too many activities.

In the case at hand the restraints imposed on defendant were considerably narrower from the standpoint of area and activity. We think this case is more like *Wilmar, Inc. v. Corsillo*, 24 N.C. App. 271, 210 S.E. 2d 427 (1974), *cert. denied*, 286 N.C. 421, 211 S.E. 2d 802 (1975). We consider very appropriate the following statement by Chief Justice Stacy in *Sonotone Corp. v. Baldwin*, 227 N.C. 387, 390, 42 S.E. 2d 352, 354 (1947), quoted in *Wilmar*:

> "There is no ambiguity in the restrictive covenant. It was inserted for the protection of the plaintiff, and to inhibit the defendant, for a limited time, from doing exactly what he now proposes to do . . . The parties regarded it as reasonable and desirable when incorporated in the contract. Subsequent events, as disclosed by the record, tend to confirm, rather than refute, this belief. Freedom to contract imports risks as well as rights. Such a covenant is lawful if the restriction is no more than necessary to afford a fair protection to the covenantee and is not unduly oppressive on the covenantor and not injurious to the interests of the public."

We hold that the covenant in question was not unreasonable.

[4] Defendant contends the court erred in granting the preliminary injunction, not only for the reasons discussed above but because plaintiff failed to show probability of irreparable harm. We find no merit in this contention.

Plaintiff argues that it showed a confidentiality between it and its customers and that defendant's actions betrayed that confidence; that it also showed the loss of one patron to defendant's new employer and the possibility of loss of others. We find this argument persuasive. Furthermore, defendant acknowledged in Paragraph 13 of the employment agreement that irreparable injury would result from a breach by him of the agreement.

For the reasons stated, the order appealed from is

Affirmed.

Judges ARNOLD and ERWIN concur.