DEBBIE C. WILLIAMS, AND ASHLEY NICOLE WILLIAMS v. NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANT

No. COA04-995

(Filed 15 November 2005)

**Insurance— underinsured motorist coverage—renewed older policy—no opportunity to select or reject**

    A total failure on the part of the insurer to provide an opportunity to reject UIM coverage or select different UIM policy limits violates the requirement that these choices be made by the policy owner. Such failure should not invoke the minimum limits established by N.C.G.S. § 20-279.21(b)(4) and shield the insurer

from additional liability, and the trial court did not err by determining that the insured was entitled to UIM coverage of $1 million per person and $1 million per accident.

Appeal by defendant from a judgment entered 27 May 2004 by Judge Russell J. Lanier, Jr. in Lenoir County Superior Court. Heard in the Court of Appeals 9 March 2005.

*White & Allen, P.A., by Matthew S. Sullivan, Thomas J. White, III, and Gregory E. Floyd, for plaintiff-appellee.*

*George L. Simpson, III, for defendant-appellant.*

BRYANT, Judge.

Ashley Nicole Williams and her mother, Debbie C. Williams, (plaintiffs) filed an action for declaratory judgment seeking a determination of the amount of underinsured motorist coverage (UIM) available to them under an automobile liability policy issued by Nationwide Mutual Insurance Company (defendant) to David and Mary Ann Canady. Both parties filed motions for summary judgment. The trial court granted plaintiffs' motion for summary judgment, determining the insurance policy provided UIM coverage with limits of $1,000,000.00 per person and $1,000,000.00 per accident. For the reasons discussed herein, we affirm the trial court's ruling.

*Facts*

This matter was presented to the trial court upon stipulated facts. On 17 July 2001, Ashley Nicole Williams (Ashley) was injured in an automobile accident while riding as a passenger in a 1992 Dodge automobile owned by David Canady and operated by his son, Jeremy Canady. Jeremy's negligence was the sole proximate cause of the accident and Ashley's injuries. At the time of the accident Ashley was a minor and her mother, acting as her guardian, incurred expenses for her daughter's medical treatment until Ashley reached the age of majority.

On the date of the accident, the Canady vehicle was insured under an automobile policy issued by Nationwide with bodily injury coverage of $50,000.00 per person and $100,000.00 per accident. The parties stipulated that plaintiffs "are insureds for purposes of the Canady policy's UIM coverage." The dispute in this matter concerns the amount of UIM coverage available under the Canady policy based upon the following stipulated facts:

6. . . . The Canady policy was issued to Mr. and Mrs. Canady initially in 1984, and, except for periods of time when the policy was cancelled due to the Canadys' failure to pay the premium, it remained in effect through July 17, 2001, either through new, reinstated or renewal policies. The Canady policy was last renewed prior to the July 17, 2001 accident on June 12, 2001 for the policy period from June 12, 2001 to December 12, 2001. Neither Mr. Canady nor Mrs. Canady were offered by Nationwide or its authorized agent an opportunity to select or to reject UIM limits greater than their liability limits at any time prior to July 17, 2001. The option to select or reject UIM limits that are greater than the policy's liability limits was not available to insureds in North Carolina at any time prior to the effective date of the 1991 amendments to the UIM statute. Neither Mr. Canady nor Mrs. Canady signed a North Carolina Rate Bureau UM/UIM selection/rejection form for the Canady policy at any time prior to July 17, 2001.

*Procedural History*

Plaintiffs filed their Complaint in the Superior Court of Lenoir County on 1 March 2004, seeking a declaratory judgment of the amount of UIM coverage available to them under the Canady insurance policy. On 14 May 2004, plaintiffs and defendant filed cross-motions for summary judgment. These motions were heard by the Honorable Russell J. Lanier, Jr. on 17 May 2004. On 27 May 2004, the trial court granted plaintiffs' motion for summary judgment, determining the applicable UIM limits under the Canady insurance policy to be $1,000,000.00 per person and $1,000,000.00 per accident. Defendant appeals.

---

In its sole assignment of error, defendant contends the trial court erred in granting plaintiffs' motion for summary judgment and denying its motion for the same. Under Rule 56(c) of the Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). Because the parties have stipulated to the applicable facts, we consider only whether the trial court properly found plaintiffs were entitled to judgment as a matter of law. "Any error made in interpreting a statute is an error of law . . . ." *In re Appeal of North Carolina Sav. & Loan League*, 302 N.C. 458, 464, 276 S.E.2d 404, 409 (1981).

Section 20-279.21(b)(4) of the North Carolina General Statutes governs UIM coverage. The version of this statute in effect in 1984, when the Canady policy was first issued, provided that UIM limits "were not to exceed the policy limits for automobile bodily injury liability as specified in the owner's policy." N.C. Gen. Stat. § 20-279.21(b)(4) (1983). The General Assembly amended the statute in 1991 to provide that the amount of UIM coverage was "not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000) **as selected by the policy owner.**" 1991 N.C. Sess. Laws 646, § 2 (emphasis added). The 1991 amendment also added the following language to the statute: "The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision." *Id.* The General Assembly subsequently amended this statute in 1992, inserting the following language: "If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." 1991 N.C. Sess. Laws 837, § 9.

Defendant relies on *State Farm Mut. Auto Ins. Co. v. Fortin,* 350 N.C. 264, 513 S.E.2d 782 (1999), in an attempt to show the statutory limits of N.C. Gen. Stat. § 20-279.21(b)(4) apply. In *Fortin,* the insured had initially rejected underinsured motorist (UIM) coverage and the policy was later renewed with the continuing rejection of UIM coverage. *Fortin,* at 266, 513 S.E.2d at 783. However, the forms provided to the insured at renewal merely contemplated a renewal of a previously selected coverage and did not offer the insured a fresh choice to reject UIM coverage or select different coverage limits as required by recent amendments to N.C.G.S. § 20-279.21(b)(4). *Fortin,* at 270-71, 513 S.E.2d at 785. The failure of the forms to provide for a new choice to reject or select different UIM coverage was interpreted by our Supreme Court to result in an invalid rejection of UIM coverage. *Id.* "Therefore, because there was neither a valid rejection of UIM coverage nor a selection of different UIM coverage limits," the statutory coverage limits established in N.C.G.S. § 20-279.21(b)(4) applied. *Fortin,* at 271-72, 513 S.E.2d at 786. However, a lack of a fresh choice concerning the selection of UIM coverage in a renewal form, as occurred in *Fortin,* is not equivalent to the situation at hand where there has been a total failure to provide the insured with an opportunity to select UIM coverage.

"Underinsured coverage is mandatory unless rejected by the insured in accordance with the provisions of N.C. Gen. Stat. § 20-279.21." *Maryland Cas. Co. v. Smith*, 117 N.C. App. 593, 598, 452 S.E.2d 318, 320 (1995). The statutory limitations for UIM coverage established in N.C.G.S. § 20-279.21(b)(4) take effect if the named insured does not reject UIM coverage or does not select UIM coverage limits different than the bodily injury liability coverage contained in the policy. N.C.G.S. § 20-279.21(b)(4) (2001). Here, however, the insured was not given the opportunity to reject or select different coverage limits. If N.C.G.S. § 20-279.21(b)(4) were to apply in this situation, insurers would be permitted to establish default UIM coverage simply by failing to provide the proper rejection/selection forms to their clients. This would be contrary to the requirements set forth in the statute: "Such owner's policy of liability insurance: (4) Shall . . . provide underinsured motorist coverage . . . **as selected by the policy owner.**" *Id.* (emphasis added). The statute clearly establishes that the insured must be given the initial opportunity to reject or select different policy limits. *Maryland Cas.*, at 598, 452 S.E.2d at 321; *see also, Fortin*, at 268, 513 S.E.2d at 784 ("[A]n insurer is required to offer its insureds the opportunity to select UIM coverage limits . . . and to obtain a valid rejection or selection of different UIM coverage limits . . . .").

While N.C. Gen. Stat. § 20-279.21(b)(4) does not address the applicable default policy limits where the insured is not given the opportunity to select or reject the UIM policy limits, this Court has held "[a]ny ambiguity in the Financial Responsibility Act (Act), which includes section 20-279.21(b)(4), must be liberally construed to effectuate the Act's remedial purpose—protecting innocent victims of automobile accidents from financially irresponsible motorists." *Metro. Prop. & Cas. Ins. Co. v. Caviness*, 124 N.C. App. 760, 763, 478 S.E.2d 665, 668 (1996) (citing *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 352, 152 S.E.2d 436, 444 (1967)). In *Caviness*, this Court held the statute as written prior to the 1992 amendments was ambiguous as to the amount of UIM coverage available to an insured who failed to select or reject UIM coverage, and, in order to protect innocent victims, the insured was entitled to the highest available limit of UIM coverage of $1,000,000. *Caviness*, at 763-65, 478 S.E.2d at 667-68.

A total failure on the part of the insurer to provide an opportunity to reject UIM coverage or select different UIM policy limits violates the requirement that these choices be made by the policy owner. Such

a failure should not invoke the minimum UIM coverage limits established in N.C.G.S. § 20-279.21(b)(4) and shield the insurer from additional liability. So doing would violate the purpose of the statute to protect the insured and allow them to choose their policy benefits. Accordingly, we find no error committed by the trial court and affirm its order granting plaintiffs' motion for summary judgment.

Affirmed.

Judges McGEE and STEELMAN concur.